**Donald J. KOSSMAN, Plaintiff,**

v.

**CALUMET COUNTY, Defendant.**

**Warran JODAR, Plaintiff,**

v.

**CALUMET COUNTY, Defendant.**

**Rodney OTT, Plaintiff,**

v.

**CALUMET COUNTY, Defendant.**

Civ. A. Nos. 81-C-419, 83-C-1669 and 84-C-879.

United States District Court, E.D. Wisconsin.

Jan. 9, 1985.

Robert Lutz and Derek McDermott, Bonk, Lutz, Hertel, Burnett & McDermott, Wilford W. Elliott, Chilton, Wis., for plaintiffs.

David Leo Uelmen and Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, Milwaukee, Wis., M.E. Mellor, Corporation Counsel, New Holstein, Wis., for defendant.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

These three consolidated cases were tried to the court in December of 1984 and January of 1985. The plaintiffs are three former Deputy Sheriffs (one, however, has been reinstated) from Calumet County, Wisconsin. All have brought suit against the County, charging that its mandatory retirement age of 55 for deputy sheriffs violates the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* Although I have a great deal of sympathy for the County in these cases as it tries to make some sense out of what is an almost impossible maze and mismatch of judicial opinions and legislative determinations, I find for the plaintiffs and direct that judgment be entered in favor of each of them as provided herein.

Donald Kossman was born June 28, 1925. He started working as a Deputy Sheriff in Calumet County in 1957. Shortly after reaching age 55, on December 31, 1980, he was terminated pursuant to the County's "mandatory retirement policy." At the time of his termination, Kossman held the position of Sergeant-Investigator with the department.

Warren Jodar was born on September 21, 1926. He was hired by the County in 1958, and was terminated pursuant to the policy on October 1, 1981.

Rodney Ott was born on April 6, 1927, and was hired by the County in 1963. Ott was terminated pursuant to the policy on June 30, 1982. Without prejudice to the rights of the county to claim that its actions were proper in this case, it reinstated Ott as a Deputy Sheriff on March 26, 1984. At the time of his termination in 1982, Ott held the position of Sergeant-Traffic Officer, the same position that had been held by Jodar.

Calumet is a small mideastern county in Wisconsin. Its 1970 population was 27,604. In 1980, its population was 30,867. Despite its relatively small size, it is, of course, subject to the provisions of the age discrimination law. *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983).

The Act prohibits discrimination on the basis of age against all persons within the protected age group, now ages 40 through 70. The issue in this case is whether Calumet County's mandatory retirement age policy falls within the Act's exception for cases "where age is a bona

fide occupational qualification reasonably necessary to the normal operation of the particular business ...." 29 U.S.C. § 623(f)(1). The county has the burden of proving the bona fide occupational qualification (BFOQ) defense that it raises in this case. I find that the credible evidence in this case falls far short of that necessary to carry the burden. Having listened to and observed the plaintiffs, I am convinced that they are fully able to discharge the duties of a Calumet County deputy sheriff despite their respective ages. Accordingly, I reject the defense and find in favor of the plaintiffs.

In *Orzel v. City of Wauwatosa Fire Dep't*, 697 F.2d 743 (7th Cir.1983),—a case that involved the application of a mandatory retirement age of 55 to an assistant fire chief—the Court of Appeals for this Circuit held that it was not enough for an employer "to show that it made a good faith judgment concerning the safety needs of its citizens" when it enacted the mandatory retirement policy. The Court in *Orzel* rejected the argument that the employer's "mandatory retirement policy should be upheld as long as that policy is 'not the result of an arbitrary belief lacking in objective reason or rationale' ...." If a good faith judgment, based simply on some loose correlation between the needs of the job and the effects of age were enough to bring a mandatory retirement policy within the BFOQ exception the Act would have, as the Court noted, little effect. More is required of a defendant seeking the protection of a BFOQ defense.

Obviously, some of the duties of a Calumet County Deputy Sheriff require quick, strenuous, and sometimes vigorous physical activity, and sometimes the conditions of employment are hazardous. Certainly also, one's ability to respond diminishes with age. In this case, the county has done little more than attempt to establish some inverse correlation between age and job fitness. It has not done so, and even if it did it would not be enough to carry its burden.

Many of the duties performed by a Calumet County Deputy Sheriff, a police officer in a small, rural, and sparsely populated county, are not particularly dangerous. There is nothing in the record that convinces me to the degree of proof required, that one's ability to perform the tasks of a Calumet County Deputy Sheriff are diminished to such an extent at age 55 that it is "reasonably necessary" to the normal operation of the Sheriff's Department that the officer be relieved of his duties.

In a similar case tried in the Western District of Wisconsin, Judge Shabaz found that three Deputy Sheriffs employed by Crawford County were entitled to reinstatement, as their discharge by the county violated the Age Discrimination In Employment Act. Judge Shabaz rejected the defense of Crawford County that its action was justified as a BFOQ. Against the "not clearly erroneous" standard, the Court of Appeals for this Circuit affirmed Judge Shabaz in *Heiar v. Crawford County, Wisconsin*, 746 F.2d 1190 (7th Cir.1984).

Crawford County, which lies in the southwestern corner of Wisconsin, had a 1980 population of 16,556. It is hard to believe that the duties of a deputy vary significantly in Crawford and Calumet Counties. Also, if the law in this area is to have any redeeming value, it must afford some reasonable certainty to those trying to avoid violating it. In my judgment, it would be disastrous to find that deputy sheriffs could be retired involuntarily at 55 in Calumet County but not in Crawford County. Also, what would the policy be in the other 70 counties in Wisconsin? Inconsistent results in interpreting this area of the law would not serve the public interest.

█ In addition to a finding of liability in this case, the plaintiffs urge that I find the actions of the county to be "wilful" under the Act. A finding of "wilfulness" entitles the plaintiffs to liquidated, or double, damages. Considering the murky area of the law in which the issue in this case is raised and the obvious unfairness inherent in the decision of Congress to exempt federal personnel in the law enforcement area from

the requirements of the Act, a finding of wilfulness in this case is out of the question. See the dissent of Judge Gibson in *Heiar v. Crawford County, supra.*

In conclusion, I find that the action of the defendant in retiring Kossman, Jodar and Ott violated the Age Discrimination in Employment Act. All are entitled to an award of back pay set off against the pension payments, unemployment compensation, and other income that they received during the period following their termination. Also, I find that each plaintiff should receive an award of interest to make them whole. Because substantial stipulations have been reached in these cases insofar as the damage figures are concerned, I will give the parties an opportunity to negotiate further and present to the court a stipulated bottom line damage plus interest award for each plaintiff. Hopefully, an agreement can be reached as to each and a judgment entered accordingly. If the parties are unable to agree on the amount of damages plus interest, they must file their respective positions with me on or before February 5, 1985, and appear at a hearing to argue the point on February 11, 1985, at 1:30 p.m. In addition, as prevailing parties, each plaintiff is entitled to an award of attorney's fees. Like the damage figures, the parties should attempt to reach an agreement on the sum and failing that, they should follow the same procedure outlined above in resolving the general damage question in this case.

Simply for guidance on the attorneys' fees issue, I think it appropriate to note that I believe this case, at least certainly the trial aspect of it, was not too well focused. It took 4 days of trial to put in the evidence, twice the time I was told it would take when the case was pretrialed. Some of the trial time was wasted on matters of general irrelevancy. The issue in this case, if properly focused, should have been presented in no more than the two days originally set as an estimate. This observation may warrant consideration by counsel on the issue of attorney's fees.